**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Carlton D. ROBINSON, Defendant–Appellant.**

**No. 02–3520.**

United States Court of Appeals, Sixth Circuit.

Oct. 17, 2003.

Nancy L. Kelley, Asst. U.S. Attorney, U.S. Attorney's Office, Cleveland, OH, for Plaintiff–Appellee.

James R. Willis, Cleveland, OH, for Defendant–Appellant.

BEFORE: KEITH, SUHRHEINRICH and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Defendant Carlton D. Robinson appeals from his judgment of conviction and sentence, entered by the United States District Court for the Northern District of Ohio on May 1, 2002. Specifically, Defendant was convicted of possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). We AFFIRM the district court's judgment for the reasons discussed below.

The conviction was rendered pursuant to Defendant's conditional guilty plea on both counts, and Defendant was sentenced to 262 months imprisonment. Defendant argues on appeal that the district court erred in denying his motion to suppress evidence discovered during a search pursuant to his arrest because the traffic stop of Defendant's car, and Defendant's subsequent arrest, occurred in violation of his Fourth Amendment rights, and thus the fruits of the search conducted pursuant to that unlawful arrest should have been suppressed.

## I. FACTS

The record reflects that on October 25, 2001, East Cleveland Police Officer Phillip Adkins and Officer Ken Potchatek (at the time an applicant for the East Cleveland Police Department) were driving in a police cruiser on Euclid Avenue in the city of East Cleveland during a twelve-hour shift. At 1:57 a.m. the officers observed Defendant's vehicle make a left turn onto Euclid Avenue, then make a right turn onto nearby Chapman Avenue. According to the testimony of both Officers Adkins and Pot-

chatek, Defendant committed two moving violations in making the right turn, to wit, turning right from the "fast" lane, and failing to use a turn signal in doing so. Officer Adkins pulled Defendant over and requested his driver's license. According to Adkins, Defendant informed him that he did not have the license with him and then proceeded to engage in various "furtive movements." Officer Adkins testified that, upon viewing these furtive movements, he decided to have Defendant exit the vehicle and to place him in the back of the police cruiser for "identification and safety purposes." As Officer Adkins and Defendant walked back toward the cruiser, Defendant attempted to escape, and a struggle ensued between the two, during which Adkins, Potchatek, and other officers whom Adkins had summoned to the scene used pepper spray on Defendant and placed him under arrest. Following Defendant's arrest, officers of the East Cleveland Police Department conducted an inventory search of his vehicle. The search revealed a red hat on the driver's seat, containing some plastic bags filled with crack cocaine, as well as a loaded firearm.

On November 20, 2001, Defendant was indicted on two counts: possession with intent to distribute more than 50 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Defendant filed a motion to suppress the evidence of the crack cocaine, claiming that it was obtained in violation of his Fourth Amendment rights. Pursuant to Defendant's motion, the district court held a suppression hearing. Both Officers Adkins and Potchatek testified, in pertinent part, that they stopped Defendant's vehicle because of traffic infractions committed while making the right turn from Euclid Avenue onto Chapman Avenue; that Officer Adkins had Defendant exit his vehicle because of his fail-

ure to produce a driver's license and his furtive movements; and that Defendant attempted to escape, resulting in the calling of backup assistance and Defendant's arrest. Defendant also testified and denied having committed any traffic violations before the police pulled him over. He also testified that Officer Adkins, upon approaching the vehicle, did not ask Defendant for any identification, but instead grabbed his sweatshirt hood and demanded that he exit the car. According to Defendant, as they proceeded toward the police cruiser, Adkins and Potchatek pushed him to the ground, "maced" him, and handcuffed him.

At the conclusion of the hearing, the district court credited the testimony of Officers Adkins and Potchatek over the testimony of Defendant. Based on its credibility determination, the district court concluded that the officers had a valid basis for the traffic stop, as well as for the subsequent detention and arrest of Defendant, and that no Fourth Amendment violations had occurred. The district court therefore denied Defendant's motion to suppress. Defendant thereafter entered a conditional guilty plea to Counts 1 and 2 of the Indictment, but he reserved his right to appeal the district court's denial of his motion to suppress. The district court sentenced Defendant, in accordance with the plea agreement and the presentence report, to 262 months imprisonment, and judgment was entered to that effect on May 1, 2002. This timely appeal followed.

## II. ANALYSIS

When reviewing a district court's denial of a defendant's motion to suppress evidence, we "review[ ] the district court's factual findings for clear error and its legal conclusions *de novo.*" *United States v. Pollard,* 215 F.3d 643, 646 (6th Cir.2000).

"In reviewing the court's factual findings, we will consider 'the evidence in the light most likely to support the district court's decision.'" *United States v. Guimond,* 116 F.3d 166, 169 (6th Cir.1997) (quoting *United States v. Roark,* 36 F.3d 14, 16 (6th Cir.1994) (internal quotations omitted)). Moreover, we accord great deference to a district court's credibility determinations. *United States v. Navarro–Camacho,* 186 F.3d 701, 705 (6th Cir.1999) (citing *United States v. Cooke,* 915 F.2d 250, 252 (6th Cir.1990)).

Defendant argues on appeal that the district court erred in denying his suppression motion because neither the stop of Defendant's vehicle nor his subsequent detention passed constitutional muster under the Fourth Amendment's requirements. As for the stop of the vehicle, Defendant argues that the district court's decision to credit the officers' testimony was clearly erroneous given the contradictions in their testimony. Defendant further argues that, based on Ohio law, his arrest for a minor traffic offense was invalid. Therefore, Defendant concludes, the search conducted pursuant to his arrest violated the Fourth Amendment, and the evidence found during that search should have been suppressed.

Based on our review of the record, the testimony of the officers was consistent in all relevant respects. Therefore, we do not believe the district court clearly erred in crediting the testimony of the officers over the testimony of Defendant, particularly given the great deference to be afforded that credibility determination. *Navarro–Camacho,* 186 F.3d at 705.

According to the testimony of Officers Adkins and Potchatek, Defendant committed two moving violations when turning right onto Chapman Avenue. Police officers may, consistent with the Fourth Amendment's requirements, stop vehicles for observed violations of traffic laws. *See, e.g., Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (holding that a traffic stop was proper because the vehicle in question bore "expired tags in violation of the [law]"); *United States v. Johnson,* 242 F.3d 707, 710 (6th Cir.2001) (holding that traffic stop for a broken tail light did not violate the Fourth Amendment). We therefore find that the traffic stop of Defendant's vehicle was proper.

Defendant also argues that his failure to present his driver's license to Officer Adkins did not entitle Officer Adkins to arrest him, citing Ohio statutory and case law for the proposition that an officer can only make arrests for minor misdemeanors under certain circumstances. *See* Ohio Rev.Code § 2935.26 (discussing circumstances under which an arrest for a minor misdemeanor is permitted); *State v. DiGiorgio,* 117 Ohio App.3d 67, 689 N.E.2d 1018 (Ohio Ct.App.1996) (holding that a failure to produce a license is not a first-class misdemeanor entitling an officer to make an arrest); *State v. Mason,* 115 Ohio App.3d 187, 684 N.E.2d 1294 (Ohio Ct.App. 1996) (same).

However, we do not believe that an arrest initially occurred in this case. Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police may stop an individual if, at the time of the stop, there exists sufficient reasonable suspicion that the individual is engaged in criminal activity. *United States v. Hurst,* 228 F.3d 751, 756–57 (6th Cir.2000). This seizure of a suspect by the police may only be for a brief time period and limited scope; the police officer may ask a moderate number of questions to determine the suspect's identity and to try to obtain information confirming or dispelling the officer's suspicions. *United States v. Fountain,* 2 F.3d 656, 664 (6th Cir.1993) (quoting *Berkemer v. McCarty,* 468 U.S.

420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). Moreover, the degree of force utilized by officers during a detention must be "reasonably related in scope to the situation at hand" and not "so intrusive as to constitute an arrest." *United States v. Hardnett,* 804 F.2d 353, 356–57 (6th Cir.1986).

We have interpreted "reasonable under the circumstances" to mean that highly intrusive conduct is acceptable if deemed necessary to effectuate the stop of a suspect. *See United States v. Heath,* 259 F.3d 522, 522–26, 530 (6th Cir.2001) (holding that the police officers' conduct, which included blocking the defendant's car, approaching with guns drawn, pulling the defendant from the car and wedging him between the car door and the body of the car, and frisking and handcuffing him, "did not rise to the level of an arrest"); *Houston v. Clark County Sheriff Deputy John Does 1–5,* 174 F.3d 809, 815 (6th Cir.1999) (holding that the use of handcuffs in itself does not exceed the bounds of a *Terry* stop); *United States v. Critton,* 43 F.3d 1089, 1092–94 (6th Cir.1995) (holding that a detention in a police cruiser does not automatically transform a *Terry* stop into an arrest); *Hardnett,* 804 F.2d at 357 (holding that blocking a suspect's car and approaching the suspect with a firearm drawn was reasonable where the officer had reason to believe the suspect was armed).

■ According to Officer Adkins, Defendant did not have his driver's license and he began making furtive movements, and Officer Adkins therefore asked Defendant to accompany him to his police vehicle for "safety and identification purposes." Removing Defendant from his vehicle was "reasonably related in scope to the situation at hand," *Hardnett,* 804 F.2d at 356–57, and it did not constitute an arrest for purposes of the Fourth Amendment inquiry. Defendant's subsequent arrest only

occurred because, based on the testimony of Officer Adkins and Potchatek, he attempted to flee the scene. Therefore, Defendant's argument lacks merit.

### III. CONCLUSION

We conclude that the district court did not clearly err in crediting Officers Adkins and Potchatek's testimony. Moreover, the traffic stop was legal based on Defendant's moving violations; the extended detention and removal of Defendant from the vehicle was legal based on Defendant's failure to produce a driver's license; the arrest was legal based on Defendant's attempt to flee; and the search was legal because it was conducted pursuant to the valid arrest. Because no Fourth Amendment violations occurred, the district court correctly denied Defendant's suppression motion. Accordingly, we **AFFIRM** the judgment of the district court.