OPINION
Defendant, Jason M. Martina, appeals from his conviction and sentence on one count of driving after dark with but one working headlight, in violation of R.C. 4513.04, and one count of knowingly possessing less than 100 grams of marijuana, in violation of R.C. 2925.11. Martina argues on appeal that the trial court erred when it denied his motion to suppress evidence, and when at his subsequent trial the court denied his motion to dismiss for the State's failure to preserve discoverable evidence. We find no error, and will affirm.
On January 25, 2001, Sheriff's Deputy Douglas M. Phillips observed a red Ford Escort with only one working headlight at the intersection of Lyons Road and Washington Church Road in Washington Township. Deputy Phillips stopped and approached the vehicle. Deputy Phillips explained to Martina, the driver, the reason for the stop and asked to see his driver's license. Martina told Deputy Phillips that he did not have his driver's license with him. Deputy Phillips asked him to step out of the car, conducted a pat- down search of Martina's person, and placed him in the back of the police cruiser.
At this point, the testimony of the two actors diverge. Martina testified at the suppression hearing that he provided Deputy Phillips with his name, address, social security number, and driver's license number while he remained in the Escort. Martina testified that after Deputy Phillips received this information, Deputy Phillips removed him from the car and placed him in the police cruiser. Martina testified that Deputy Phillips then began searching the Escort without his consent.
Deputy Phillips testified that he removed Martina from the vehicle and placed him in the police cruiser before asking him for his name, date of birth, and social security number, which Martina provided. Deputy Phillips testified that he found it odd that Martina also provided his Ohio driver's license number from memory as well. Deputy Phillips testified that he asked Martina again if there were any forms of identification in the car, to which Martina responded that there were none. Deputy Phillips testified that he then asked Martina if he would "mind if I looked in his vehicle for identification," to which Martina responded that he did not mind.
Deputy Phillips searched the passenger compartment of the Escort. Deputy Phillips testified that he limited the search to the area around the driver's seat where identification ordinarily would be found. Deputy Phillips soon observed a personal organizer attached to the sun visor on the driver's side. He opened it and found Martina's social security card and birth certificate inside, and in addition a small bag of marijuana. Deputy Phillips returned to the cruiser and issued Martina citations for driving with only one headlight after dark and minor misdemeanor possession of marijuana.
On February 20, 2001, Martina filed a request for discovery pursuant to Crim.R. 16. On March 20, 2001, the prosecutor responded to the discovery request, providing the criminal record of the Defendant, the names and addresses of witnesses, the crime lab report, a written summary of oral statements by Defendant, and a summary of "favorable and material" evidence pursuant to Crim.R. 16(B)(1)(f). The discovery response stated under the summary of oral statements that "defendant stated that the deputy could check in the vehicle for his ID," and that there was no "favorable and material" evidence known at that time.
On March 26, 2001, Martina filed a motion to suppress "all evidence seized and observations made by all officers that support the allegations contained in the complaint herein" and "any and all statements made by the Defendant while in the presence of any police officers." On April 23, 2001, the trial court held a hearing on the motion to suppress.
Deputy Phillips testified at the suppression hearing that his cruiser is equipped with a video camera that automatically begins recording when the overhead lights are activated. Deputy Phillips testified that the video equipment was turned on that evening, but he was unsure whether the recording, if one was made, yet existed. Deputy Phillips explained that each officer is issued thirty-one tapes, numbered one through thirty-one, and uses each tape on the corresponding day of the month. A tape that is not needed as evidence is rewound or erased and reused the next time the officer works on that date during the month following.
The trial court denied the motion to suppress, crediting Deputy Phillips' testimony that Martina had consented to a search of Martina's car, rejecting Martina's testimony to the contrary. On June 5, 2001, Martina filed a supplemental discovery request for the video tape and a motion to compel discovery of the videotape. The City of Kettering did not respond to the request and the motion.
At the trial on June 11, 2001, Deputy Phillips testified that on April 24, 2001, he determined that the videotape used to record the stop of Martina's car had been erased. Martina objected to Deputy Phillips' testimony regarding the events that occurred on January 25, 2001, citing the failure to provide the video tape, and moved to dismiss on the same grounds. The objection was overruled. Deputy Phillips again testified that he received consent from Martina before searching the vehicle. The trial court found Martina guilty of driving with only one headlight after dark and minor misdemeanor possession of marijuana. The court imposed a $110 fine and suspended Martina's license for six months.
Martina filed timely notice of appeal. He presents two assignments of error.
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT'S DENIAL OF APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM APPELLANT'S VEHICLE SHOULD BE REVERSED BECAUSE THE EVIDENCE WAS OBTAINED AS A RESULT OF AN ILLEGAL SEARCH IN VIOLATION OF APPELLANT'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS
"In a motion to suppress, the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." State v. Retherford (1994), 93 Ohio App.3d 586, 592 (citing State v. Clay (1972),34 Ohio St.2d 250). "Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence." Id. An appellate court must, however, determine de novo whether the trial court's conclusions of law, based on those findings of fact, were correct. Id.; State v. Guysinger (1993),86 Ohio App.3d 592, 594.
A police officer has probable cause to stop a vehicle he observes driving at night with only one headlight. State v. Evans (1993),67 Ohio St.3d 405. Failure to produce a valid driver's license is a lawful reason to detain a driver in order to ascertain whether the driver is, indeed, licensed. Evans, supra; see also State v. Lozada (2001),92 Ohio St.3d 74, 78-79. Police officers are authorized to conduct a pat-down search of a driver and detain the driver in a patrol car in order to avoid a dangerous condition, if placing the driver in the patrol car is the least intrusive means of avoiding the dangerous condition. Lozada, supra, paragraph one of the syllabus.
Deputy Phillips had probable cause to stop Defendant's vehicle when he witnessed Defendant driving with but one operable headlight. The deputy was also authorized to detain Defendant for investigation of whether he was licensed to drive when Defendant was unable to produce a license or satisfactory proof that he had a license upon the officer's request. The officer cited safety reasons for asking Defendant to sit in his cruiser while he verified the information the Defendant gave him, which was a sufficient basis for the pat-down of Defendant's person the deputy performed.
The evidence that Martina's motion sought to suppress was not located in the pat-down, but instead in a subsequent search of his vehicle. The search was performed without a warrant. Upon Martina's motion to suppress evidence seized in the search, it was the State's burden to prove an exception to the warrant requirement. The State claimed consent.
"The question of whether a consent to a search was in fact `voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte (1973), 412 U.S. 218, 227,93 S.Ct. 2041, 2047-48, 36 L.Ed.2d 854, 863-64. Since the question of whether the defendant has consented to a search is a question of fact and requires an assessment of the credibility of the evidence, the trier of fact is in the best position to make this determination. State v. Foster (1993), 87 Ohio App.3d 32.
The state bears the burden of proving that the defendant's consent was "freely and voluntarily given." Florida v. Royer (1983), 460 U.S. 491,497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236. The state has not met its burden when all it has proven is "mere submission to a claim of lawful authority." Id.
As noted above, we find that Deputy Phillips lawfully detained Martina to determine whether he was a licensed driver. Deputy Phillips testified that Martina also consented to the search while he sat in the back of the cruiser. Martina denies that he did. The trial court credited Deputy Phillips' version of the event, which demonstrates an exception to the warrant requirement.
Martina argues that because he was detained and seated in Deputy Phillips' cruiser when he purportedly gave his consent, it was a mere submission to a "claim of lawful authority" and therefore not voluntary. Florida v. Royer, supra. That is an overly-broad reading of the rule. Lawful authority to search implies that the person whose home or automobile is to be searched has no right to resist the search. Bumper v. North Carolina (1968), 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797. In the context of Florida v. Royer, supra, and the authorities it cites, the claim is no more than a mere claim; that is, an assertion of some lawful authority to search that in fact does not exist. The consent is then not voluntary, but coerced. Bumper v. North Carolina, supra. Here, Deputy Phillips claimed no lawful authority to search Martina's car to locate his driver's license. The prospect that Martina consented to the search demonstrates no more than a desire to resolve the difficulty in which he found himself.
Viewing the totality of the circumstances, we find that the trial court's determination that Martina voluntarily consented to the search of the passenger area of the car for identification is supported by the record. In addition, the search that yielded the marijuana was reasonably within the ambit of the consent the trial court found Martina gave the Deputy Phillips.
Finally, Martina argues that the search was outside the scope of the detention. Once a traffic citation has issued, the legitimate basis for detaining the individual ceases. Retherford, supra. However, consent to search a vehicle is valid when it is obtained during the period of time reasonably necessary to process a citation. State v. Swope (Nov. 9, 1994), Miami App. No. 93-CA-46, unreported.
Defendant relies on the decision of this court in State v. DiGiorgio (1996), 117 Ohio App.3d 67, to argue that he was unreasonably detained after he gave his name, address, Social Security number, and Ohio driver's license number to the deputy. In DiGiorgio we held that when, having been given similar data, the officer verified by computer check that the driver he had stopped was licensed, the officer lacked probable cause to then arrest him for driving without a license.
Our concern in DiGiorgio was whether the officer lacked probable cause to arrest the defendant for failure to present satisfactory proof that he was licensed to drive. Our concern here is whether, as Martina suggests, it was unreasonable for the officer to search his car for his license or other evidence of Martina's identity, even with his consent, instead of verifying by a computer check of the information he had provided that Martina was licensed.
The facts here differ from those in DiGiorgio. It was the officer's verification of that information in DiGiorgio that made the proof of licensure that the defendant had offered satisfactory. Instead of taking that same step, Deputy Phillips here attempted to verify Martina's statements by looking in his vehicle for identification. Of course, such identification would only verify or disprove the identity that Martina gave, not show whether he was licensed. However, verification is relevant to whether the proof he gave was satisfactory, or would be upon a subsequent computer check. Deputy Phillips was not required to run a computer check of the information Martina gave him without first attempting to verify it as he did.
We find that the trial court did not err when it denied Martina's motion to suppress. Accordingly, the first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT'S DENIAL OF APPELLANT'S MOTION TO DISMISS SHOULD BE REVERSED AND THE CONVICTION VACATED BECAUSE THE STATE FAILED TO PRESERVE THE AUDIO/VIDEO RECORDING OF THE EVENTS ON QUESTION AFTER APPELLANT MADE A TIMELY DISCOVERY REQUEST, AND SAID TAPE WAS MATERIALLY EXCULPATORY
Martina argues that the trial court erred when it denied his motion to dismiss the charges against him because the State had failed to produce the videotape of his detention in the cruiser. In essence, Martina argues that had the tape been produced, it would have demonstrated through the audio recording of the conversation between Martina and Deputy Phillips while Martina was in the back of the cruiser that he did not consent to Deputy Phillips' search of his car.
In State v. Berry (Feb. 12, 1999), Montgomery App. No. 17155, unreported, we had the opportunity to analyze the applicable law on this issue:
 The Supreme Court of the United States has differentiated between "material exculpatory" evidence and "potentially useful" evidence in the context of suppressed or unpreserved evidence alleged to be exculpatory. Arizona v. Youngblood (1988), 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281. Ohio courts have followed the Supreme Court in this regard stating, "if the prosecution suppresses, or fails to preserve, material exculpatory evidence, then a criminal defendant's due process rights have been violated." State v. Lewis (1990), 70 Ohio App.3d 624, 634, 591 N.E.2d 854. Unless appellant can show bad faith on the part of the police, however, suppression or failure to preserve potentially useful evidence does not constitute a denial of due process of law. State v. Keith (1997), 79 Ohio St.3d 514, 523, 684 N.E.2d 47, citing Youngblood, supra at 57-58. See Lewis, supra; State v. Groce (1991), 72 Ohio App.3d 399, 594 N.E.2d 997; State v. Fort (July 18, 1997), Lucas App. No. L-96-299, unreported.
 Exculpatory evidence is material for constitutional purposes only if (1) its exculpatory nature was known before it was destroyed, and (2) it is of such a nature that no comparable evidence could be reasonably produced by the defense. California v. Trombetta (1984), 467 U.S. 479, 488-489, 104 S.Ct. 2528, 81 L.Ed.2d 413.
Id. at **3-4.
It is undisputed that the State failed to preserve the videotape. However, it is not clear that the videotape contained materially exculpatory evidence. It might, if it corroborated the version of events to which Martina testified at the suppression hearing, that he did not consent to the search of his vehicle. However, and unless one assumes that Deputy Phillips lied, the State was unaware of that claim until Martina so testified, raising the suggestion that the tape was exculpatory. The trial court elected to believe Deputy Phillips and to disbelieve Martina, however. At most the unknown contents of the video tape would constitute potentially useful evidence, therefore. Berry, supra. Accordingly, Martina was required to demonstrate that the State acted in bad faith when it failed to preserve the contents of the video tape in response to Martina's discovery request. Id.
Martina made a form request, pursuant to Crim.R. 16, stating only that "Defendant herein demands discovery pursuant to Criminal Rule 16." The discovery demand was included in the document filed February 20, 2001, which also included the entry of appearance, the plea of not guilty, the request for pre-trial conference, and the waiver of time. There is no evidence of bad faith by the prosecutor's office or the sheriff's department other than the argument that the videotape should have been produced pursuant to this request.
Crim.R. 16(B)(1)(i) requires the prosecuting attorneys to provide, upon motion of the defendant, "[r]elevant written or recorded statements made by the defendant. . . ." A strict interpretation of this rule could encompass a videotape of a traffic stop. However, practically speaking, it is not clear that the prosecutor should have known that the contents of the tape may have constituted relevant evidence because the tape only became relevant when Martina denied that he consented to the search of his car.
Martina relies on two Ohio appellate decisions from outside our district for the proposition that the state should be made to bear the burden of proof on the first prong of the Trombetta test. See Columbus v. Forest (1987), 36 Ohio App.3d 169; State v. Benton (2000),136 Ohio App.3d 801. However, we find that Forest and Benton are distinguishable in that in both instances the defendant made almost immediate, specific requests for discovery of the tapes in question, requests which the state ignored. Accordingly, in those cases, the courts first found that the State breached its duty of good faith in failing to respond to the discovery requests, and then shifted the burden of proof regarding the exculpatory value of the evidence onto the State. See Forest, supra, at 173; Benton, supra, at 806. In essence, in Forest and Benton the courts shifted the burden of proof on the first prong only after determining that the State had breached its duty of good faith.
Here, we do not have a situation where, as in Forest and Benton, the apparent importance of the recording was immediately known and prompted a quick, specific request for the recording by the defendant. The importance of the videotape was not known until the suppression hearing of April 23, 2001, after the prosecutor's office had timely responded to the discovery request.
Martina made a supplemental request for discovery on June 5, 2001, specifically seeking "[a]ny and all electronic video or audio surveillance recordings of or regarding Defendant Jason M. Martina." Martina also filed a motion to compel the production of this evidence on that day. The State did not respond to these requests. However, it is apparent from Deputy Phillips' testimony at trial on June 11, 2001, that the recordings, if any were made, had been erased sometime before April 24, 2001. We find that the State's failure to respond to the June 5 request for discovery and motion to compel, under these circumstances, did not constitute a breach of good faith.
On this record, we cannot find that the State acted in bad faith when it failed to preserve the contents of the videotape. Therefore, the trial court did not err when it denied Defendant's motion to dismiss.
The second assignment of error is overruled.
 Conclusion
Having overruled each assignment of error presented, the judgment from which this appeal is taken will be affirmed.
BROGAN, J. and YOUNG, J., concur.